### LEWIS, plaintiff in error, *vs.* SOULE, defendant in error.

In giving a construction to words declared upon as libelous, resort cannot be had to the innuendo, the effect of which is to explain the context, not to add to it.

A publication declared upon as libelous, contained this paragraph: "It must be and is painful to all who feel the force of conscientious impulses, and who regard the solemn responsibility of an oath, to witness at our elections the frequent violations of truth, committed by those brought forward at the polls. The recurrence of false swearing is too common to pass unpunished. No casuistry can palliate or excuse it." This language is too vague and uncertain to constitute a charge of the crime of perjury. And when these were the only actionable words set out in the declaration, and the inducement averred no more than that the plaintiff was Supervisor of the Township; that there was a general election; that plaintiff was a member of the Board of Election, and also a candidate for re-election, whether the alleged libelous matter is regarded by itself, or in connection with the intrinsic facts pleaded, the charge of perjury is not sufficiently alleged.

To render a publication libelous, it must indicate the person intended by name, or connect him with some fact or circumstance, known to those to whom the publication is addressed, by which they may understand who is meant. And to enable a jury to determine upon the application, such fact or circumstance should be in proof, and that cannot be, unless it is pleaded.

Error to Calhoun Circuit.

This was an action for the publication by plaintiff in error, of an alleged libel of and concerning the plaintiff below. It was tried at the April term of the Calhoun Circuit, 1853, and

resulted in a verdict for plaintiff of $154. There were several special assignments of error—the principal of which were, that if the words set forth in the several counts of the declaration respectively were actionable at all, their actionable quality arose from extrinsic circumstances which were not averred, and they could have no application to plaintiff in error, and also that each count contained innuendoes which materially enlarged the sense of the words of the publication. Such facts as are necessary to a full understanding of the case are set out in the opinion of the Court.

*H. K. Clarke*, for plaintiff in error.

The declaration does not show according to the required forms of pleading, that the words complained of convey any imputation upon the plaintiff below, which will sustain his action, and in the third and fourth counts no libelous charge whatever, is legally averred as made against any one. In counting upon a libel, unless the terms used in it necessarily apply to the plaintiff, such facts should be averred as will render the character and application of the words plain to the Court. There must be, 1st, the inducement averring such extrinsic facts as it may be necessary to prove to show such character and application; 2d, the *colloquium* connecting the facts as averred with the libel charged, (by saying that the words were published " of and concerning " the facts so averred and the plaintiff,) and 3d, the *innuendo* applying the different facts of the charge, to the facts before set forth in the inducement. (1 *Chit. Plea*, 400–7; 1 *Stark on Sland.* 392; *Wend. Ed.; Taylor* vs. *Kneeland*, 1 *Doug.* 67; *Van Vechten* vs. *Hopkins*, 5 *J. R.* 211; *Bloss* vs. *Tobey*, 2 *Pick.* 320; *Andrews* vs. *Woodmansee*, 15 *Wend.* 232; *Miller* vs. *Maxwell*, 16 *Ib.* 9.)

The innuendoes cannot be perverted to serve the purpose of the inducement; hence it is held that an innuendo cannot be proved. (*Snell* vs. *Snow*, 13 *Metc.* 278; *Carter* vs. *An-*

*drews,* 16 *Pick.* 1; *Goldstein* vs. *Foss,* 2 *Y. & J.* 145; *Gibson* vs. *Williams,* 4 *Wend.* 320; *Caldwell* vs. *Abbey, Hardin,* 529; *Van Vechten* vs. *Hopkins,* 5 *J. R.* 226.) And if it materially enlarges the sense of the words, it will vitiate the declaration, even after verdict. (*Adams* vs. *Meredew,* 2 *Y. & J.* 417; *Watts* vs. *Greenlee,* 2 *Dev.* 115; *Hawkes* vs. *Hawkey,* 8 *East,* 427; *Barham's case,* 4 *Co.* 20.)

The articles set out in the third and fourth counts are mere general propositions, with no averments making any application of their language to the plaintiff. To be libelous upon any particular person, they must reflect on that person. (*Stark Sland.* 169; 1 *Kent. Com.,* 7 *Ed.* 621.) Each count must be perfect in itself. (1 *Chit. Plea.* 413.) Each count contains innuendoes materially enlarging the sense of the words. That this is fatal to the declaration, see cases before cited.

If either count be bad, judgment must be reversed. (*Bloss* vs. *Tobey,* 2 *Pick.* 320; *Day* vs. *Robinson,* 1 *Ad. & El.* 554; *Ruth & Kutz,* 1 *Watts,* 489; *Vaughn* vs. *Havens,* 8 *J. R.* 109.)

*Crary & Hughes,* for defendant in error.

1. The words charged in the first count are actionable without the aid of extrinsic circumstances. If any of the words in this count are libelous without averment of extrinsic facts, that is sufficient. (*Bloom* vs. *Bloom,* 5 *S. & R.* 391; *Nestle* vs. *Van Slyck,* 2 *Hill,* 282.)

2. There is a sufficient averment of extrinsic circumstances in the first count to make the words in each count actionable, and it is not necessary to repeat these averments in each count. (*Loomis* vs. *Levick,* 3 *Wend.* 205; *Nestle* vs. *Van Slyck,* 2 *Hill,* 282; *Mix* vs. *Woodard,* 12 *Conn.* 262.)

3. The judgment will be sustained, after verdict, if one count is good. (*Hogg* vs. *Wilson,* 1 *N. & M.* 216.)

4. It is for the jury to say whether the innuendoes are true,

or whether they enlarge the meaning of the words. (*Smith* vs. *Miles*, 15 *Verm.* 245; 26 *Wend.* 383.)

By the Court, JOHNSON, J.

The matter charged as libelous, is alleged to have been published in a public newspaper called the Marshall Statesman, published in Marshall, Calhoun county.

The declaration contains four counts, and a verdict was taken for damages assessed upon the whole declaration.

Numerous errors are assigned, and among others the plaintiff assigned for error that the third and fourth counts in the declaration are not good, for the reason,

1. That the matters therein set forth are not libelous; and

2. That they have no application to the plaintiff.

Our inquiries will then be limited principally to these two questions; and in order to acquire an accurate understanding of them, it will be necessary to set forth some parts of this declaration, with a view of applying the rules of law applicable to this species of pleading.

The plaintiff below, in the introductory statement of his declaration, after the usual statement of good character, proceeds: "And whereas, also, before the committing of the several grievances by the said Seth Lewis, as hereinafter mentioned, (the said Milo Soule was supervisor of the township of Marengo, in said county, and as such supervisor as aforesaid, was a member of the Board of Inspectors of Election, and acted in his said official capacity, at an election held in and for said township, for the election of township officers, as provided by the statute of this State; and whereas, the said Milo Soule was candidate for the office of supervisor at said election, to wit: at Marshall, aforesaid.") These are the only intrinsic facts to which the libelous matter hereafter stated, can have reference for explanation.

The third count of the declaration is as follows: "Overt

acts of treason against the State are by law made capital offences; but it is doubtful whether this grave crime, [meaning the crime of treason,] open in its commission as it is, and therefore capable of immediate detection and punishment, is more an object worthy of detestation and dread, than insidious encroachments upon the purity and sanctity of the right of suffrage. It must be, and is painful to all who feel the force of conscientious impulses, and who regard the solemn responsibility of an oath, to witness at our elections, the frequent violations of truth committed by those brought forward at the polls. The recurrence of this crime of false swearing is too common to pass unpunished. No casuistry can palliate or excuse it. [Thereby, then and there, meaning and intending to charge, and insinuate, that the said Milo Soule had been guilty of the crime of perjury, at said township election.] Its perpetrator, however, who is perhaps guilty through his ignorance, does not deserve greater blame than he who procures it to be committed. [Thereby, then and there, meaning to charge and insinuate that said Milo Soule had been guilty of procuring and suborning some person or persons, to commit perjury at said township election,].

"These reflections will not be deemed out of place by those who have recently mixed in the scenes of township elections, and we have indulged in them from a sense of duty, as a conductor of a public press. Influenced by sentiments of deep regard for the purity of the elective franchise, and anxious for its legal exercise, uncontrolled by artifice, we had occasion to notice last week, the manner in which the township election, [meaning the aforesaid election,] was conducted in Marengo. The facts in the case we gave, as they came to our knowledge, [meaning the pretended facts hereinbefore set forth, in the second count of this declaration.] Since then we have made some inquiries in relation to the transactions of the election, [meaning the said Marengo township election,] and find nothing of importance to correct in our

statement, [meaning the said libel, in the said second count mentioned, and that the pretended facts therein contained, were true.]

" If we were conscious that we held an office procured by dishonorable means, obvious to unprejudiced judgment, we would immediately resign that office and return to our constituents, and crave forgiveness from them for having insulted their sense of right." (Thereby, then and there, meaning that the said Milo Soule had obtained the said office of supervisor of the township of Marengo, by dishonorable means.)

This constitutes the complete record in this case, from which we are to determine whether the matters charged in this third count are libelous.

. 1. Are the words *per se* actionable, and if not, are they made so by the extrinsic matter set forth in the inducement? If there are any words in this count actionable, they are included in the following paragraphs, viz : " It must be, and is painful, to all who feel the force of conscientious impulses, and who regard the solemn responsibility of an oath, to witness at our elections the frequent violations of truth, committed by those brought forward at the polls. The recurrence of this crime of false swearing, is too common to pass unpunished. No casuistry can palliate or excuse it." (Thereby, then and there, meaning and intending to charge and insinuate, that the said Milo Soule had been guilty of the crime of *perjury*, at said township election.)

In giving a construction to these words, we are not to call to our aid this innuendo; the office of that is to explain the context, and not to add to it; and without that, is there any charge of perjury against any one? It partakes of the character of a general proposition, that it is painful to witness the violation of truth committed by those who are brought forward to the polls. False swearing does not necessarily constitute perjury; it must have reference to, or be charged to have been committed in some legal proceeding. But it is insisted

here that an election is a legal proceeding, wherein a man may commit perjury, by falsely swearing in his vote. This is true; but no one is here charged with swearing in his vote, or of procuring any other person to do so, or of administering an oath to any one who desired to do so. The violation of truth may be committed by those brought forward to the polls, without the commission of the crime of perjury; and so may there be false swearing, without any legal administration of an oath. On the whole, this publication is altogether too vague and uncertain to constitute a charge of the crime of perjury. Neither are we aided in the matter, by reference to the extrinsic facts set out in the inducement. The pleader, in that part of his declaration, has simply recited that the defendant in error, Milo Soule, was the supervisor of the township of Marengo; that there was a general election; that he was a member of the Board of Election; and also a candidate for re-election. This may all very well be; but his being the supervisor of the township of Marengo, and a candidate for re-election, did not necessarily imply the taking of an oath; and the alleged libelous words could not have had reference to the oath taken by Soule, as a member of the Board of Inspectors, because the charge referred, in express terms, to those persons who were brought forward at the polls; and it is no where averred that any person took or administered an oath, or procured, or caused to be procured, any other person to take or administer an oath, authorized by law, on that occasion. So that, whether we look at the alleged libelous matter alone, or in connection with the extrinsic facts pleaded, in either case, we think the charge of perjury is not sufficiently alleged.

So, too, we think the objection is well taken under this assignment of error, that the libelous matter in this count has no application to the defendant in error.

Whether the libelous matter has application to the plaintiff, is a question of fact, to be determined by the jury. The law

upon this subject is now well settled, and the true test is said to be, whether those who are acquainted with the person libeled, upon hearing the charge, are able to make the application. Chief Justice Abbot, in the case of Burke *vs.* Warren, 2 Carr. & Payn, 307, in charging the jury, said : " The question for your consideration is, whether you think the libel designates the plaintiff in such a way as to let those who know him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient that those who know the plaintiff can make out that he is the person meant."

In many instances, this becomes a nice and difficult question. Men generally talk, and write, to be understood; and when they design to speak of and concerning an individual, they either refer to him by name, or connect him with some fact or circumstance, by which those addressed, understand who is intended to be designated. That fact or circumstance must be known by those to whom the communication is made; otherwise, nothing is communicated.

Therefore, to enable a jury to determine upon the application, it is necessary that this fact or circumstance should be in proof: that cannot be done unless it be pleaded.

Now, in the case at bar, no reference in the alleged libelous matter, is made to Milo Soule. That published, treats of false swearing at elections, and refers to a township election at Marengo. Admitting, then, that here is a crime of perjury charged; it is necessary to show that the plaintiff in error took such a part in that election as to make that charge applicable to him; that he is so definitely and distinctly pointed out, that those who are familiar with the circumstances of that election, and the part that *he* took in it, are able to say that he is the person meant. We are to concede that every thing *was* proven before the jury, that is alleged in this count; and upon that concession it becomes our duty to inquire whether there is sufficient alleged, to warrant the

66

jury in coming to the conclusion that the libelous matter had reference to the plaintiff in error. They have said so in this case, and if by any fair and reasonable intendment, they had the right to say so, their verdict cannot be disturbed.

It is of no account that the plaintiff below alleged in his colloquium, that this publication was of and concerning the plaintiff, as supervisor of the township of Marengo, &c. There are connecting words applying the libelous words to the extrinsic facts set out in the inducement, in order, when so applied, and taken together, we may determine whether or not they sufficiently designate the plaintiff in error as the person to whom the libelous matter had reference.

Now, what are the extrinsic facts? Simply that the plaintiff in error was a *Supervisor, an Inspector of Election*, and a *candidate*, as before stated; and the innuendo is, that he did, on that election, commit perjury. Is such a conclusion justifiable? How can it be said that he committed perjury, any more than any other man who attended that election? By what authority, or upon what evidence, could the jury say that this publication pointed out Milo Soule? If the plaintiff below had alleged that he swore in his vote at that election, or had taken any other oath, the false swearing of which would have been perjury, or had procured any person to take the like oath, with the allegation of a proper colloquium, there would be some pretence for saying that the jury rightfully found that one of the innuendoes was true, but as it is, we think there is no proof whatever to warrant this verdict.

We are therefore of the opinion that the judgment in this case must be reversed.