336 A.2d 847.

ARNOLD A. FONTAINE, *p.p.a. vs.* GEORGE DEVONIS *et al.*

MAY 2, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. The plaintiffs brought this action of trespass on the case for negligence to recover for personal injuries suffered by Arnold A. Fontaine, a minor, and consequential damages sustained by his father.[1] A jury in Superior Court returned a verdict for the plaintiff child, Arnold A. Fontaine, in the amount of $1,500 and for the plaintiff child's mother, Elizabeth Fontaine, in the amount of $5,500. The trial justice denied the defendants' motions for a directed verdict made at the close of the plaintiffs' evidence and at the close of all the evidence, as well as denied the defendants' motion for a new trial. He also granted a new trial on the question of damages unless the defendants consented to an additur of $10,000. The defendants appealed.

The pertinent facts are as follows. On the afternoon of August 1, 1966, defendant Eleanor Devonis was operating an automobile owned by defendant George Devonis in a westerly direction along Lauder Avenue, Pawtucket, Rhode Island. In crossing Lauder Avenue, plaintiff, a 3½-year-old child, came in contact with the automobile operated by defendant driver. The plaintiff child sustained injuries which required considerable hospitalization and medical attention. There were no impartial witnesses to the occurrence.

## I
### The Motions for a Directed Verdict

The defendants first argue that the trial justice was in error in denying defendants' motions for a directed verdict. In *Pimental* v. *D'Allaire*, 114 R. I. 153, 330 A.2d 62 (1975), this court reiterated the rule governing the denial of a directed verdict. Therein we stated that the trial justice must view all the evidence in a light most favorable to

---

[1]Elizabeth Fontaine was substituted for Arnold Fontaine, father of the injured child, as a plaintiff in this case after their divorce.

the adverse party and is obliged to give such party the benefit of all reasonable and legitimate inferences which may be properly drawn therefrom without sifting or weighing the evidence or exercising the justice's independent judgment as to the credibility of witnesses; and, if after taking such a view, he finds that there exists issues upon which reasonable persons might draw conflicting conclusions, he should deny the motion and the issues should be left to the jury to determine. When the Supreme Court reviews the trial justice's decision on a motion for a directed verdict, the court looks at the evidence in the same manner and fashion as the trial justice and is bound by the same rules which govern him.

In reviewing the record by this standard, we are convinced that the trial justice followed these strictures carefully. The first question to be decided by the trial justice was whether defendant driver was negligent. This issue was a factual question for the jury. There were some uncontradicted facts from which reasonable persons could come to different conclusions as to how the accident happened. In addition there were conflicting versions of the accident which created a question of fact as to whether defendant driver saw the child early enough to avoid the accident or failed to see the child when she should have.

The trial justice also had to pass on the question of whether plaintiff child was guilty of negligence as a matter of law.[2] The plaintiff child was 3½ years old at the time of the accident. He was hit in the middle of a street 24 feet wide, and there was conflicting testimony as to how and when he arrived at that point. The trial justice concluded that the court could not rule that a 3½-year-old child running across a street is guilty of negligence as a matter of law in these circumstances. In *Rosenthal* v. *United Electric*

---

[2]General Laws 1956 (1969 Reenactment) §9-20-4 on comparative negligence was not in effect at the time of this action.

*Rys.*, 79 R. I. 11, 82 A.2d 830 (1951), this court considered the question of contributory negligence related to the conduct of a 5½-year-old child. We stated therein that the standard of ordinary care as applied to children of such tender years is only that degree of care which children of the same age, education, and experience would be expected to exercise in similar circumstances, and held that whether the minor plaintiff exercised due care conformable to the standard in such cases was a question of fact for the jury. *See also Murnigham* v. *Dark,* 107 R. I. 457, 268 A.2d 274 (1970), and *Reek* v. *Lutz,* 90 R. I. 340, 158 A.2d 145 (1960). Such a factual issue was presented here. Thus, the trial justice had a sufficient basis in both fact and law to deny defendants' motion for a directed verdict and to submit the case to the jury on the question of plaintiff child's contributory negligence.

The record also supports the trial justice's ruling denying defendants' motion for a directed verdict at the close of all the evidence. One of the witnesses called by defendants was defendant operator's mother, who was a passenger in the car at the time of the accident. She testified that she saw the child as he came out of a yard, crossed the 5-foot-wide sidewalk, and then entered the street. The defendant operator then gave another version as to what she saw or failed to see. Thus it is clear that the trial justice was justified in denying defendants' motion at that juncture, since the foregoing evidence raised questions of fact to be determined by the jury.

## II

### *The Evidentiary Rulings*

The defendants next argue that the trial justice was in error in excluding certain evidence offered by defendants. The first error in this regard relates to a purported conversation between defendant driver and plaintiff child's father, Arnold Fontaine. Closely akin to this alleged error is de-

fendants' contention that the trial justice erred in not allowing defendants to produce the father after oral argument had commenced. The defendants made an offer of proof that the proffered testimony consisted of an allegation that Mr. Fontaine told defendant operator that plaintiff child, in explaining how the accident happened, said that he "just ran out into the street and got hit by the car," and thus this testimony would impeach the credibility of plaintiff Elizabeth Fontaine. The record indicates that there is no denial by plaintiffs that the child had run out into the street. In fact, there is considerable testimony that he did. Hence, the jury had this factual background before it, and therefore it is difficult to see how this exclusion of evidence could have influenced the verdict or otherwise adversely prejudiced defendants.

Furthermore, we do not believe that the excluded testimony was admissible as an admission. The child was merely engaging in a simple factual recitation. A 3½-year-old child could hardly be expected to elucidate upon the proper nuances to indicate his freedom from negligence. For the above reasons, therefore, we hold that there was no reversible error when the trial justice excluded the proffered statement and when he refused to allow defendants to produce the father after defendants' oral argument had commenced.

Another evidentiary error alleged by defendants relates to the ruling of the trial justice precluding the introduction of a police report, or a diagram therein, as a full exhibit. Even if we assume that the trial justice should have admitted the exhibit under the business records exception to the hearsay rule, we do not believe that its exclusion was reversible error since there was repeated testimony throughout the trial which reiterated the route which was followed by plaintiff child just prior to the accident and which was

similar to the route sketched in the diagram prepared subsequent to the accident.

## III

### The Charge to the Jury

The defendants next allege that the trial justice was in error in his charge to the jury. The defendants requested that the following charge pursuant to G. L. 1956 (1968 Reenactment) §31-18-5 be given:

> "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

The trial justice refused to give this charge on the ground that the statute was inapplicable to a child of such tender years. We think that both reason and authority support this position. The law recognizes the reality that children act upon childish instincts and impulses by the establishment of the rule that, on the assumption of some capacity for negligence, ordinary care as applied to children is only that degree of care which children of the same age, education, and experience would be *expected* to exercise in similar circumstances. While ordinarily a trial justice should draw the attention of the jury to existing statutes within the above context, he need not do so where, as a matter of law, a child cannot be held to the standard articulated in the statute. Clearly, as in this case, a prudent child of 3½ years old cannot be expected to be cognizant of the provisions of §31-18-5 and to control and conform his conduct accordingly.

In holding that a child is not to be subjected to a charge which in the case of an adult would be given, we do not say that he is free from a general duty to obey statutes. We do say that the consequences which follow violation of statutes in the case of adults do not necessarily apply in the case of infants. The age, experience, and intelligence

of the child are to be considered in determining whether he was guilty of contributory negligence even where he violated such a statute. If evidence demonstrates that a minor, in view of the above, could be held to the standard of reasonable care applicable to adults, the instruction should be given. *Simmons* v. *Holm*, 229 Ore. 373, 367 P.2d 368 (1961).

The defendants further argue that the trial justice, in pointing out certain facts to the jury, thereby indicated that he wanted the jury to bring back a verdict for plaintiffs. In reviewing the charge, we do not believe that this contention is supported by the factual recitation therein. Nor do we find any merit in defendants' assertion that the trial justice's charge relative to damages influenced the jury's consideration of the amount of the verdict. His reference to "[a]ny permanency in the injury, such as the plate in his head, or part of his missing skull or something of that nature" was illustrative, not determinative.

The defendants contend that the trial justice's charge of the last clear chance doctrine was prejudicial to defendants and was reversible error. We do not agree with this contention. As noted above, a review of the transcript indicates that there were at least two versions of the occurrence of the accident given by defendant operator. There was conflicting evidence as to whether or not she saw or could have seen the child on the sidewalk. Since the accident occurred in the middle of the street, and plaintiff child was hit by the left front grille of the automobile, after running across a 5-foot-wide sidewalk, the doctrine of last clear chance might be applied, presuming, of course, that the jury found the plaintiff child guilty of contributory negligence. As we reiterated in *Piacitelli* v. *Saldin*, 94 R. I. 367, 373-74, 180 A.2d 821, 825 (1962):

> " 'It is clear that in those cases where the occasion has arisen for a discussion of the limits of the doctrine the court has held it applicable only where the evidence

disclosed that the plaintiff had negligently placed himself or his property in a position of peril; that defendant thereafter had become aware or in the exercise of due care ought to have become aware of plaintiff's peril and his lack of comprehension of it or apparent inability to extricate himself from it; that the defendant if he had been in the exercise of due care had a reasonable opportunity thereafter to avoid injuring the plaintiff; and that defendant failed to exercise such care.' "

Consequently, if defendant operator, as indicated in conflicting testimony, noticed a small boy running to her right, coming out of a yard into the road; if at that time she slowed down and the little boy hestitated in the middle of the road, turned around and faced toward the house at 78 Lauder Avenue; if the boy suddenly began to run again toward her car and she hit the brakes and hit the boy with the left front portion of her car, then the last clear chance doctrine could app'y and the trial justice was warranted in so instructing the jury.

## IV

*Denial of Defendants' Motion for a New Trial*

The defendants further argue that the trial justice was in error in denying defendants' motion for a new trial and in granting plaintiff's motion for an additur or a new trial on damages. We recently reiterated the rules governing the trial justice upon a motion for a new trial generally, and a motion for a new trial limited to damages or an additur in *Pimental* v. *D'Allaire, supra,* and *Grenier* v. *Royal Cab, Inc.,* 114 R. I. 11, 327 A.2d 272 (1974). Ae review of the trial justice's decision indicates that he followed the above rules in denying defendants' motion for a new trial. When reviewing the evidence, he alluded to the two versions given by defendant operator as to how the accident occurred. He noted that this variation might have a twofold effect. First, he felt that the jury might be justified in drawing an inference that defendant operator might not have been

paying attention to the manner in which she operated the vehicle, particularly since it was her mother, Mrs. Gilmartin, who first saw the child and yelled out. Secondly, he felt that the two separate versions could have affected defendant operator's credibility.

From his comments it is clear that the trial justice exercised his independent judgment in light of his charge to the jury, and passed upon the weight and credibility of the witness. After doing so, he found that the evidence was so evenly balanced that reasonable persons could arrive at different results in the consideration of the case; hence he was obliged to deny the motion and to affirm the verdict. *Waltz* v. *Aycrigg*, 103 R. I. 109, 235 A.2d 338 (1967).

On appeal from an adverse ruling on a motion for a new trial where the trial justice properly performs his function, the movant must persuade this court that the trial justice in deciding the motion was clearly wrong or overlooked or misconceived material evidence on a controlling issue in the case. *Pimental* v. *D'Allaire, supra.* The prime contentions made by defendants reduce themselves to inferences contrary to those made by the trial justice. The answer to these contentions is that the trial justice may in fact draw inferences contrary to a party as long as they are rooted in a reasonable view of the weight of the evidence and credibility as was done here.

The defendants claim that the trial justice did not delimit what evidence he rejected. As we reiterated in *Pimental,* the failure of the trial justice to refer to evidence contradictory to that upon which he relied does not constitute misconceiving or overlooking material evidence, provided that he refers to those portions of the evidence on which he did rely and indicates contrary evidence which he rejects. An attentive reading of his decision satisfies us that he fairly indicated the evidence on which he relied and the evidence which he rejected.

## V

*The Granting of Plaintiffs' Motion for an Additur*

Finally, defendants argue that the trial justice erred in granting a new trial on the question of damages unless defendants consented to an additur. They argue that the evidence does not warrant an additur of $10,000. The duty of a trial justice in passing on a motion for a new trial on the ground of inadequacy of damages is essentially the same as his duty in passing on a motion for a new trial generally. In the exercise of his independent judgment, he must weigh all the material evidence on the damages and pass on the credibility of the witnesses. After the evidence-sifting process is completed, and liability established, a new trial on the question of damages should be granted if there is a demonstrable disparity between the award and the damages sustained such that the verdict is not truly responsive to the merits of the controversy and fails to do substantial justice between the parties. *Grenier* v. *Royal Cab, Inc.,* *supra.*

We have further said that in exercising that judgment the trial justice, while he need not exhaustively analyze the evidence or state all his conclusions on its weight or the witnesses' credibility, should at least refer sufficiently to what prompts his action to enable a reviewing court to determine whether his inference was based upon a misconception or oversight of material evidence or was otherwise clearly wrong. *Wood* v. *Paolino,* 112 R. I. 753, 755-56, 315 A.2d 744, 745 (1974). In this case, the trial justice did not meet these requirements. Hence, we examine the record to see if it discloses an evidentiary basis for the amount of the additur.

In our view, it is clear in the case at bar that the evidence supports the trial justice's finding that such a demonstrable disparity exists between the jury's award and the damages sustained by plaintiffs. There was uncontradicted

medical testimony that the child was deeply comatose while in the accident room and nonresponsive to any stimuli. He also stopped breathing for a period of time. There was expert testimony that plaintiff child suffered multiple fractures, running the length of the left side up and down, and a sideward fracture of the skull with two fragment depressions from the normal surface of the skull. There was further testimony that one piece of bone approximately the size of one-fourth of an orange was removed, as well as a second fragment about one-half the size of a 5-cent piece.

Testimony further indicated that paralysis of the entire right facial nerve that controls the eye, face, and lip appeared after the operation. The testimony also showed that while the paralysis had moderated by the time of trial, it was still in evidence. This paralysis included a partial impairment of speech. Furthermore, plaintiff child was required to wear headgear like a football helmet until he had a second operation some months thereafter. During this subsequent operation he had a tantalum plate with four silver screws put into his skull. Additionally, plaintiff child was rehospitalized for severe abdominal pains directly related to the accident.

Other uncontradicted testimony showed that plaintiff child would be and is an excellent candidate for future epilepsy because of the accident. There was further testimony that the child would not be able to engage in normal sport activities and that he would continue to exhibit behavioral problems in the future.

Thus we find that the trial justice properly granted the plaintiffs a new trial on the question of damages unless the defendants consented to the additur. Since the defendants have not satisfied us that the trial justice either overlooked or misconceived material evidence, or was otherwise clearly wrong, we affirm.

The defendants' objections are overruled, the judgment appealed from is affirmed, and the case is remitted to the Superior Court for a new trial on damages unless the defendants shall within the period to be fixed by that court consent to the additur heretofore awarded by the trial justice.

*Gunning, LaFazia, Gnys & Selya, Edward P. Sowa, Jr.,* for plaintiffs.

*Joseph E. Marran, Jr.,* for defendants.