[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This is a medical malpractice action brought by Plaintiffs Susan Ciorlano and Louis Ciorlano (hereinafter "Mrs. Ciorlano" or "Plaintiff"), against the Defendant, Rhode Island Hospital (hereinafter "Defendant"). After a two week jury trial in August 2004, the jury found that there was no negligence on the part of Defendant toward Plaintiff Susan Ciorlano. The matter is now before this Court on Plaintiff's Motion for Judgment as A Matter of Law, or in the alternative, a Motion for a New Trial. Jurisdiction is pursuant to Rules 50 and 59 of the Superior Court Rules of Civil Procedure.
 FACTS
On May 14, 1998, Mrs. Susan Ciorlano, a thirty year old woman, was taken by rescue to the Emergency Department at the Rhode Island Hospital after becoming dizzy and fainting. Rescue personnel reported that Mrs. Ciorlano's chief complaint was "Fainting episode with shortness of breath" after she became dizzy, fainted, and fell to the floor. The report noted a question as to whether Mrs. Ciorlano had lost consciousness although rescue personnel reported that they had discovered her conscious and alert, sitting on the floor. Mrs. Ciorlano was transported with a cervical collar and on a back board with head blocks and straps to Rhode Island Hospital.
Mrs. Ciorlano arrived at the Emergency Department shortly before 6:00 p.m., and the triage assessment noted a history of a syncopal episode, diarrhea for six (6) weeks, positive hematuria (blood in urine), and a miscarriage six (6) weeks prior. After being assessed by the triage nurse, urgent care nurse, and a physician, Mrs. Ciorlano was transported to x-ray shortly after 7 p.m., for a cervical spine x ray, which was reported as negative for any abnormalities. After Mrs. Ciorlano was returned from x-ray, and a physician had cleared her for removal of the cervical collar and back board, Mrs. Ciorlano was examined by third year Brown University medical student, Melissa Lai (hereinafter "Lai"). At 7:40 p.m., Lai stepped outside the curtain of the examination bay to allow Mrs. Ciorlano to change into a hospital gown. At around 7:45 p.m., while Mrs. Ciorlano was changing, Lai heard a noise, went into the examining bay and found Mrs. Ciorlano in a sitting position on the floor, awake, alert and oriented, with a bump on her forehead and edema on her left cheek. Following Mrs. Ciorlano's fall, Mrs. Ciorlano was assessed by Dr. Lemke, an Emergency Medicine physician, who performed neurological checks and found the patient to be alert and oriented with normal vital signs. Mrs. Ciorlano was then sent to x-ray for x-rays of her facial bones and a skull CT scan, both of which were negative for any fractures or abnormalities.
Mrs. Ciorlano subsequently demonstrated episodes of seizure like activity, and Dr. Lemke, after examining Mrs. Ciorlano, noted his clinical impression was "? Seizure/? Psuedo seizures." Mrs. Ciorlano was seen in consultation by a neurologist, and on May 15, 1998 was admitted to the hospital overnight, with a diagnosis of "Syncope/New Onset Seizure. One May 16, 1998, Mrs. Ciorlano was discharged from the hospital, having had no further episodes of seizure or syncope, with a negative EEG. In 2000, Mrs. Ciorlano filed a lawsuit against Rhode Island Hospital.
A jury trial began on August 3, 2004 and lasted for two weeks. The Plaintiff alleged that the Defendant, through its employees, was negligent in putting her into an Emergency Room with her bed rails lowered and permitting her to be left alone while she changed, before there was a complete assessment made by a physician. Plaintiff claimed that she suffered bruising to her face and a fracture of her thoracic spine as a result of the incident. At trial, there was expert testimony on behalf of both parties.
The jury found that there was no negligence on the part of the Defendant. The matter is now before the Court on Plaintiff's Motion for Judgment as A Matter of Law or in the alternative, a Motion for New Trial.
 STANDARD OF REVIEW
Rule 50 of the Superior Court Rules of Civil Procedure, entitled "Judgment as a Matter of Law in Actions Tried by Jury; Alternative Motion for New Trial," provides in pertinent part:
 "(b) Renewal of Motion for Judgment After Trial; Alternative Motion for New Trial: Whenever a motion for judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative. If a verdict was returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. If no verdict was returned, the court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial."
In ruling on a motion for judgment as a matter of law, the trial justice must consider the evidence in the light most favorable to the nonmovant, absent any questions of credibility, but without the benefit of any inferences based on conjecture, speculation, or surmise. Long v.Atlantic PBS, Inc., 681 A.2d 249, 252 (R.I. 1996) (citing Souza v.Narragansett Council, Boy Scouts of America, 488 A.2d 668 (R.I. 2001)). Our Supreme Court has determined that a verdict may be directed only when the evidence authorizes only one legitimate conclusion in regard to the outcome. Long, 681 A.2d at 252 (citing Kenney Manufacturing Co. v.Stockweather Shepley, 643 A.2d 203, 206 (R.I. 1994)).
The standard for our review of the grant or denial of a motion for a new trial is also well settled. Martinelli v. Hopkins, 787 A.2d 1158, 1165
(R.I. 2001) (citing Dilone v. Anchor Glass Container Corp., 755 A.2d 818,821 (R.I. 2000)). On a motion for a new trial, the trial justice must review the trial evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witness. Id. In doing so,
 "a trial justice sits as the super [seventh] juror and is required to independently weigh, evaluate, and assess the credibility of the trial witnesses and evidence. If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand. . . . When this Court reviews a trial justice's decision on a motion for a new trial, his or her decision will be accorded great weight and will be disturbed only if it can be shown that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Id. (quoting Graff v. Motta, 748 A.2d 249, 255 (R.I. 2000) and Morrocco v. Piccardi, 713 A.2d 250, 253 (R.I. 1998) (per curiam)).
Under these circumstances, it is the function of the trial justice to act as a "super juror" who, in light of the charge to the jury, can weigh the evidence, pass on credibility, and draw appropriate inferences therefrom. Id. at 254 (citing Barbato v. Epstein, 97 R.I, 191, 193-04,196 A.2d 836, 837 (1964)); see, also, English v. Green, 787 A.2d 1146
(R.I. 2001). "Relying on the evidence accepted and inferences drawn, the trial justice must: `decide whether to approve the verdict even against doubts as to its correctness because the evidence is nearly balanced, or is such that different minds can naturally and fairly come to different conclusions thereon; or in the alternative, to set it aside when his [or her] judgment tells him [or her] that it is wrong because it fails to respond truly to the merits of the controversy and to administer substantial justice and is against the fair preponderance of the evidence.'" Long, 681 A.2d at 254-55 (quoting Barbato, 97 R.I. at 194,196 A.2d at 837). Our Supreme Court has established that a trial justice need not offer an extended "dissertation of the evidence adduced at trial, but should provide enough reasoning so a reviewing court can determine whether the decision was rationally premised." Long v.Atlantic, supra, (citing Morinville v. Morinville, 116 R.I. 507, 511-12,359 A.2d 48, 51 (1976)).
 NEW TRIAL
Plaintiff argues that the evidence from the Plaintiff's expert indicates that Defendant acted negligently in not providing a complete assessment of Plaintiff's medical status prior to Plaintiff's fall. Plaintiff contends that the medical student, employed by Defendant, who was caring for Plaintiff deviated from the accepted standard or practice by neglecting to review tests conducted at the hospital, (but not having been returned to the lab), prior to lowering the rails on Plaintiff's bed. Plaintiff asserts that at the time the rails were lowered, Plaintiff remained at risk of injury since she had not yet been cleared of the syncope condition, which caused Plaintiff to enter the hospital in the first place. It is Plaintiff's position that having the bed rails lowered at this point in time created an unsafe environment for Plaintiff, especially in light of the fact that a qualified physician had not yet reviewed Plaintiff's lab results. Consequently, Plaintiff contends that the jury's verdict of no negligence was in clear error of the law.
In response to the Plaintiff's arguments, the Defendant argues that Plaintiff's motion for a new trial should fail because Plaintiff has made only very general assertions that do not support Plaintiff's contention that a reasonable jury could not differ based on the facts presented.
Sitting as a "super juror," this Court has reviewed all of the evidence and credibility of the witnesses at trial. The jury determined that the Defendant did not act with negligence in May 1998, and the jury reasonably could so determine based on the substantial testimony — that of Dr. Melissa Lai, Dr. Arnold Burman, Richard V. Aghabadian, M.D., Stephen Lipson, M.D. — offered at trial. Although Plaintiff contends that Lai failed to provide that standard of care required in not consulting with the physician in charge prior to lowering the patient's bed rails, the Plaintiff presented no expert witness who could support Plaintiff's assertion that a Brown University medical student was not qualified to make a determination as to when Plaintiff's bed rails could be lowered. Plaintiff's sole expert was completely unfamiliar with the responsibilities of university students working in the emergency department at Rhode Island Hospital, and conceded that he himself would not be qualified to work in the Rhode Island Hospital Emergency Room. Furthermore, Plaintiff's expert did not present any testimony suggesting that an examination of Mrs. Ciorlano's lab results by a physician would have alerted the hospital staff that they should not lower Mrs. Ciorlano's bed rails.
Moreover, one of Defendant's three experts, Richard V. Aghabadian, M.D., who works in the Department of Emergency Medicine at University of Massachusetts Memorial Health Center, provided testimony that the medical staff at Rhode Island Hospital at all times performed in a manner consistent with accepted medical practice in rendering care and treatment to Mrs. Ciorlano on May 14, 1998. Another of Defendant's experts, Stephen Lipson, M.D., an orthopedic surgeon, testified that the fall Mrs. Ciorlano experienced at Rhode Island Hospital on May 14, 1998, as described by Mrs. Ciorlano, is inconsistent with a compression fracture to Mrs. Ciorlano's thoracic spine. Additionally, it was Lipson's opinion that based upon his physical examination of Mrs. Ciorlano and his review of radiographic imaging, Mrs. Ciorlano's spine is not responsible for the back pain of which she complains. Accordingly, there was legally sufficient evidence on the record for a reasonable juror to have concluded that Defendant did not breach its standard of care to the Plaintiff, and/or that Defendant's negligence was not the proximate cause of Plaintiff's injury.
Weighing the evidence and examining the credibility of the witnesses, this Court finds that the verdict responds to the merits of the case and is not against the fair preponderance of the evidence. There was sufficient evidence to support the jury verdict for the Defendant.
 JUDGMENT AS A MATTER OF LAW
In addition to Plaintiff's motion for a new trial, Plaintiff has also moved for renewed judgment as a matter of law. In support of her position, Plaintiff points to the testimony of her expert, Dr. Arnold Burman, who states: "My opinion was that regardless of whether she had been seen by a physician or not, the workup was still not complete at the time of the fall; and therefore, leaving the bed rails down does not conform with the standard of care." (Plaintiff's Exhibit 8). In response, Defendant argues that even if the Court accepts the testimony of Plaintiff's expert, stating that Defendant breached the standard of care in failing to examine Plaintiff's lab results prior to her fall, there is no evidence on the record indicating that an examination of Plaintiff's lab results would have changed the hospital's decision.
In the present case, viewing the evidence in a light most favorable to the Defendant, without assessing the credibility of the witnesses or weighing the evidence, this Court finds that there is conflicting evidence with respect to all of the points that Plaintiff argues. Even if this Court were to fully accept the testimony of Plaintiff's expert, Plaintiff's expert did not present any testimony suggesting that an examination of Mrs. Ciorlano's lab results by a physician would have alerted the hospital staff that they should not lower Mrs. Ciorlano's bed rails. Furthermore, it was Dr. Aghabadian's opinion that given the assessments which had taken place prior to her fall, her clinical condition, and the results of laboratory and radiographic testing performed up to that point, it was entirely appropriate to put the side rail on the gurney down to allow the patient to change into a hospital gown. Accordingly, drawing all reasonable inferences in favor of the Defendant, this Court finds that the Plaintiff's renewed motion for judgment as a matter of law must be denied.
 CONCLUSION
For the above reasons, this Court denies Plaintiff's motions for a new trial and for renewed judgment as a matter of law. Counsel shall submit the appropriate judgment for entry.